## 46831. SIMPSON v. KING.
### (383 SE2d 120)

SMITH, Justice.

Appellee Mrs. Forrest King was named administratrix of decedent Elkin Stanley Simpson's estate. An application challenging the appellee's appointment filed by the appellant, Monica Simpson, was denied by the Probate Court. The appellant appealed to the Fulton County Superior Court where her motion for partial summary judgment was denied and where the appellee's motion for summary judgment was granted. We affirm in part and reverse in part.

The appellee and the decedent were married in 1978, and she gave birth to a child, Elkin Simpson II. The couple separated in August 1980, but did not obtain a divorce. Sometime in 1985, the appellant moved into the decedent's home to live with him. In the course of their cohabitation, the appellant became pregnant, and they told various family members about their future child.

Mr. Simpson instituted divorce proceedings against the appellee, and, on June 25, 1985, a final alimony and property settlement agreement was entered into by the parties. The agreement gave Mr. Simpson custody of Elkin II and awarded the appellee $2500 for her share of the home in which Mr. Simpson and the appellant resided. The agreement was made an order of the court on August 22, 1985. On September 6, 1985, before a final divorce decree was entered, Mr. Simpson died in an airplane crash in Wisconsin.

The appellee applied to be named administratrix of Mr. Simpson's intestate estate as *surviving spouse* on September 11, 1985, five days after the fatal accident. The Fulton County Probate Court Judge appointed the appellee as temporary administratrix of the decedent's estate. On September 13, 1985, the appellant, as next friend of the decedent's unborn child (Tristen), filed a petition to remove the appellee as the administratrix of the estate.

Subsequently, the appellant claimed to be Mr. Simpson's common law wife. After a hearing, the probate court found that no common law marriage existed between the appellant and Mr. Simpson and that Tristen was barred by OCGA § 53-4-4 from inheriting from the estate. The court ruled that the appellant had no standing individually or on behalf of Tristen to petition the court for appellee's removal.

After Tristen was born, the decedent's parents voluntarily underwent blood tests which showed a 99.7% probability that the decedent was Tristen's father.

The appellant appealed to the Fulton County Superior Court, where her motion for partial summary judgment was denied, and the appellee's motion for summary judgment was granted.

1. The trial court did not err in the part of its order which granted summary judgment to the appellee on the issue of the common law marriage. There was no common law marriage between the appellant and the decedent.

2. Tristen is eligible to inherit under the doctrine of virtual legitimation:

> There may be cases in which there is such clear and convincing evidence that the child is the natural child of the father and that the father intended for the child to share in his intestate estate, in the same manner that the child would have shared if he had been formally legitimated, that equity will consider that done which ought to have been done. OCGA § 23-1-8.

*Prince v. Black*, 256 Ga. 79, 80 (344 SE2d 411) (1986).

The blood tests show a 99.7% probability that Tristen is the decedent's son, and the evidence in the record indicates that Tristen's parentage was never in dispute. This evidence is sufficient to satisfy the "clear and convincing evidence" requirement as set forth above.

Mr. Simpson's actions indicated that he was in the process of taking all the necessary steps to ensure that the child whom he and the appellant had conceived would be born into a legitimate family environment. He proudly told his family and friends that he and the appellant were going to have a child. Everything necessary for his divorce from his estranged wife, Mrs. Forrest King, was complete except for the final decree.[1] He planned to marry the appellant as soon as the divorce became final which would have been prior to Tristen's birth. The fact that Mr. Simpson listed the appellant on his insurance suggests that he had already begun to think of them as a family. There is clear and convincing evidence that Mr. Simpson intended for his unborn child to be born into a legitimate family environment; thus, his unexpected death will not defeat Tristen's claim. *Prince v. Black*, supra. The trial court should not have granted summary judgment to the appellee on this issue. Therefore, the appellant has standing, as next friend of Tristen to challenge the appointment, and the trial court should not have denied partial summary judgment to the appellant on that issue.

---

[1] There was some evidence that Mr. Simpson thought that the appellee had acquired an ex parte divorce sometime prior to 1983 and that the agreement he was entering into with her was merely to clear up lingering custody and property issues.

3. The only reason Mrs. King can be considered a surviving spouse is because the final divorce decree had not been entered.[2] However, she may not inherit from the decedent's estate. OCGA § 19-6-7 provides:

> After permanent alimony is granted, upon the death of the party liable for the alimony the other party shall not be entitled to any further interest in the estate of the deceased party by virtue of the marriage contract between the parties. . . .

As part of the divorce proceedings, the appellee and the decedent entered into an agreement which read in part:

> WHEREAS, the parties hereto . . . desire *to settle all issues of alimony* support, maintenance, division of property, custody of the minor child, and any and all other matters which were may existent[sic] arising from the relationship between the parties. . . . [Emphasis supplied.]

This agreement settled "all issues of alimony" between the parties. They negotiated the agreement, signed it, and complied with it as reflected in the court order. Thus, the appellee is barred from receiving anything further from the estate "by virtue of the marriage contract. . . ." OCGA § 19-6-7.

4. Similarly, the appellee should not have been named administratrix of the decedent's estate simply because she was a surviving spouse. The general rule is:

> "Both by common law and by statute, the person entitled to the estate of a decedent is entitled to the administration." The reason usually given for this rule is that the person having title to the estate is most interested and will take best care of it. The administrator holds the estate for the purpose of paying debts and distribution. . . . The rule that the administration should go to the person having the greatest interest in the estate is generally recognized.

*Roe v. Pitts*, 82 Ga. App. 770, 773-774 (62 SE2d 387) (1950). See also Redfern, Wills and Administration in Georgia, § 261 (S. Love, 5th ed. 1988). The appellee has no interest in the decedent's estate as a surviving spouse; therefore, she should not have been named administra-

---

[2] After this suit was filed, OCGA § 53-6-24 (1) was changed to reflect the reality of broken domestic tranquility. Under the current law a surviving spouse is not entitled to serve merely because the divorce decree was not made the final order of the court.

trix.

For the foregoing reasons, we hold: There was no common law marriage between the decedent and the appellant; Mr. Simpson's child, Tristen, may inherit under the doctrine of virtual legitimation; and the appellee has no interest in the estate of the decedent and may not serve as administratrix of his estate as a surviving spouse.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Bell, J., who dissents, and Weltner, J., not participating.*

DECIDED SEPTEMBER 11, 1989 —
RECONSIDERATION DENIED SEPTEMBER 27, 1989.

*Donald R. Andersen, H. J. A. Alexander,* for appellant.
*Swift, Currie, McGhee & Hiers, Glover McGhee,* for appellee.