A11A1324. JONES et al. v. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY.
(718 SE2d 74)

DOYLE, Judge.

Robert Manlove and William Hoffman filed suit against the Unified Government of Athens-Clarke County, Georgia ("the County"), and the trial court dismissed the case.[1] The plaintiffs and their attorney, Charles A. Jones, Jr., appeal the trial court's failure to recuse and the imposition of attorney fees and costs against them pursuant to OCGA § 9-15-14 (b). We affirm, for the reasons that follow.

The record shows that the plaintiffs filed an action for declaratory judgment on January 24, 2008, challenging the constitutionality

---

[1] The Supreme Court affirmed the dismissal in *Manlove v. Unified Govt. of Athens-Clarke County*, 285 Ga. 637 (680 SE2d 405) (2009).

of a county noise ordinance. On February 19, 2008, the plaintiffs filed a motion to recuse the trial court, and the assigned judge transferred the matter to another judge, who denied the motion on March 21, 2008.

On March 19, 2008, the County filed a motion to dismiss on the basis that the plaintiffs lacked standing. On March 27, 2008, the County filed a motion for protective order and to stay discovery pending resolution of its motion to dismiss. In addition, the County argued that some of the discovery requests were objectionable and oppressive, including the plaintiffs' deposition subpoena to County Commissioner David Lynn.[2] The trial court granted the motion for protective order on April 1, 2008, and awarded attorney fees and costs to the County, with the amount to be determined following the ruling on the motion to dismiss.

On July 11, 2008, the trial court granted the County's motion to dismiss the lawsuit, holding that the plaintiffs lacked standing. In the order, the trial court noted that "[d]ismissal of the claims also renders further orders on Defendant's Motion for a Protective Order and to Stay Discovery unnecessary."[3] The plaintiffs filed a notice of appeal to the Supreme Court on July 14, 2008. Thereafter, on July 25, 2008, the plaintiffs filed a motion to strike the protective order, and on July 31, 2008, the County filed a motion for attorney fees and costs pursuant to the July 11 protective order.

On June 15, 2009, the Supreme Court affirmed the trial court's dismissal of the case, holding that the plaintiffs lacked standing to pursue their claims.[4] The County subsequently filed a motion for attorney fees and costs pursuant to OCGA § 9-15-14 (b) on August 25, 2008. Following a hearing, the trial court granted the motion on August 26, 2010, and ordered Jones to pay the County $9,145 in fees and costs.[5]

1. The plaintiffs and Jones argue that the trial court erred by failing to recuse from this case. There is no merit to this enumeration.

On February 19, 2008, the plaintiffs filed a motion to recuse the trial court pursuant to Canon 3 (E) (1) (c) of the Code of Judicial Conduct on the basis that the assigned trial judge was married to the

---

[2] In the motion, the County stated that the plaintiffs served Lynn with a deposition subpoena for March 24, 2008, and although plaintiffs' counsel had agreed to "continue" the deposition, he fully intended to move forward with it in the future.

[3] The trial court also directed the County to submit any motion for attorney fees along with supporting affidavits within 20 days.

[4] See *Manlove*, 285 Ga. at 638-639.

[5] The trial court specified that the attorney fees and costs were imposed against Jones, not the plaintiffs. Thus, only Jones has standing to appeal that ruling.

County municipal judge "who adjudicates ... alleged violations of the (noise) ordinance under challenge here."[6] On February 27, 2008, the assigned judge transferred the matter to another judge, who denied the motion on March 21, 2008, concluding that the motion was untimely, and that Canon 3 (E) (1) (c) did not apply because the municipal judge was not a party.

Pretermitting whether the February 2008 motion to recuse was timely or had merit, the plaintiffs waived appellate review of the order denying their motion to recuse by failing to enumerate it as error in their appeal to the Supreme Court regarding the dismissal of this case.[7] "A judgment is conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."[8] The plaintiffs could have raised the denial of their motion to recuse in their appeal to the Supreme Court,[9] but elected not to do so, and their failure to do so precludes them from challenging the recusal order now.[10]

---

[6] Canon 3 (E) (1) (c) of the Code of Judicial Conduct states:
Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where: ... the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person or any other member of the judge's family residing in the judge's household ... (i) is a party to the proceeding, or an officer, director, or trustee of a party; (ii) is acting as a lawyer in the proceeding; (iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding; (iv) is to the judge's knowledge likely to be a material witness in the proceeding.
(Footnotes omitted.)

[7] See *Franklin v. Gude*, 259 Ga. App. 521, 523 (578 SE2d 170) (2003).

[8] (Punctuation omitted.) Id. See OCGA § 9-12-40.

[9] See OCGA § 5-6-34 (d).
Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere. For purposes of review by the appellate court, one or more judgments, rulings, or orders by the trial court held to be erroneous on appeal shall not be deemed to have rendered all subsequent proceedings nugatory; but the appellate court shall in all cases review all judgments, rulings, or orders raised on appeal which may affect the proceedings below and which were rendered *subsequent* to the first judgment, ruling, or order held erroneous.
Id. (emphasis supplied); OCGA § 5-6-34 (a) (1) ("Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts: ... [a]ll final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35.").

[10] See *Franklin*, 259 Ga. App. at 523.

*Propst v. Morgan*,[11] relied upon by the plaintiffs, does not require a different result. In that case, Morgan filed a motion to recuse, which the trial court denied, and Morgan did not seek an interlocutory appeal.[12] Morgan then appealed the trial court's subsequent dismissal of the appeal in his case under OCGA § 5-6-48 (c). On appeal, this Court held that the motion to recuse was timely filed and sufficient to require transfer to another judge for a decision, and we vacated the trial court's judgment and remanded the case for further proceedings.[13] The Supreme Court affirmed, noting the line of cases holding that "if a party files a motion to recuse a trial judge and the motion is denied, but it is later determined that the judge should have been disqualified to act in the case, all proceedings after the filing of the motion to recuse are invalid and of no effect."[14] The Court concluded that because

[a] trial judge's dismissal of an appeal under OCGA § 5-6-48 (c) requires a significant exercise of discretion based on findings of fact[,] . . . in those rare cases in which an appeal is dismissed under OCGA § 5-6-48 (c) by a trial judge who previously denied a recusal motion, an appellate court should consider the merits of the recusal motion before considering the merits of the trial judge's dismissal ruling.[15]

The instant case is factually distinguishable. In *Propst*, Morgan appealed the recusal motion at the same time he appealed the dismissal. In the instant case, the plaintiffs appealed the dismissal order and elected not to challenge the recusal order in that appeal. Thus, they have waived their right to challenge the recusal order in this subsequent appeal.[16]

2. In several enumerations of error, Jones challenges the attorney fee award to the County entered pursuant to OCGA § 9-15-14 (b), which authorizes a trial court to

assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds

---

[11] 288 Ga. 862 (708 SE2d 291) (2011).

[12] See id. at 862.

[13] See id. at 863; *Morgan v. Propst*, 301 Ga. App. 402 (688 SE2d 357) (2009).

[14] (Punctuation omitted.) 288 Ga. at 864.

[15] Id.

[16] We further note that Jones never filed a motion to recuse the trial court on his own behalf, and therefore, any attempt to personally challenge on appeal the trial court's failure to recuse is without merit. See *Brown v. State*, 302 Ga. App. 641, 646 (4) (692 SE2d 9) (2010).

that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

"OCGA § 9-15-14 (b) is discretionary[,] and the standard of review is abuse of discretion."[17]

(a) Jones argues that the trial court abused its discretion by verbally announcing its decision to impose fees against Jones before allowing him to cross-examine the witnesses against him. But because Jones elected not to include a transcript of the attorney fee motion hearing, this claim of error fails.[18]

The portion of the transcript designated by the County, which begins with the trial court's ruling, reflects that the trial court orally announced its factual findings and decision to award fees to the County pursuant to OCGA § 9-15-14 (b), and then the Court asked the parties whether "the [trial court had] overlooked anything in announcing its decision." Jones responded that, "For us[,] we will just object to not being permitted to cross-examine the affiants, the attorneys in this case." The trial court then stated:

Okay. Well, have at it. The [c]ourt has not written a ruling now, so have it [sic] please. I didn't hear any further suggestion of — but if you want to take it on — take them, I'll be glad to hear for it and reconsider any ruling that the [c]ourt has announced that is called — based on any evidence you bring forward.

Jones proceeded to cross-examine Amy Gellins, one of the attorneys for the County; the record does not include a recordation of the cross-examination.[19] In its subsequent order granting the County's request for attorney fees and costs, the trial court stated that

---

[17] *Haggard v. Board of Regents of Univ. System of Ga.*, 257 Ga. 524, 527 (4) (a) (360 SE2d 566) (1987). See *Rescigno v. Vesali*, 306 Ga. App. 610, 616 (4) (703 SE2d 65) (2010).

[18] Jones's amended notice of appeal states that the trial court clerk "will please omit everything from the record on appeal except the [n]otice of [a]ppeal[ ] and this [a]mended [n]otice of [a]ppeal. A [r]ecord [a]ppendix will be prepared under Court of Appeals Rule 17. Transcripts will *not* be included for the record on appeal." (emphasis in original).

[19] The trial court based its award on fees incurred by the County for the work of both

following Jones's objection at the hearing, "Jones cross-examined Ms. Gellins, but elected not to cross-examine Mr. Berryman. Mr. Jones brought forward no evidence through cross-examination which would alter the [c]ourt's findings and rulings."

Clearly, Jones had the right to cross-examine the County's witnesses,[20] and the trial court erred to the extent that it failed to permit him to do so before announcing its verbal ruling.[21] Nevertheless, Jones has not demonstrated that he was harmed by this action. The record indicates that once Jones objected, the trial court allowed him to cross-examine the witness(es), and it considered the evidence adduced therein and concluded that it did not alter the court's findings. Jones's omission from the appellate record of the transcript of the specifics of his cross-examination of Gellins necessarily precludes a finding of harm. "Because harm as well as error must be shown to warrant reversal, this enumeration is without merit."[22]

(b) Jones contends that "[t]he trial court abused its discretion by issuing sanctions under OCGA § 9-15-14 because this case is not frivolous litigation." This enumeration is without merit.

Jones's failure to include the transcript of the motion hearing on appeal is fatal to this claim.

> It is the duty of the appellant to include in the record those items which will enable the appellate court to perform an objective review of the evidence and proceedings. Thus, to the extent that evidence was presented at the attorney fees hearing beyond what can be gleaned from the [remaining evidence in the record], it is not available for us to consider. Where the transcript is necessary[,] and appellant omits it from the record on appeal the appellate court must assume the judgment below was correct and affirm.[23]

In its order granting the County's motion for attorney fees and expenses, the trial court concluded that "Jones has acted without substantial justification[ ] and with the intent to harass or unneces-

---

Gellins and a second attorney, William C. Berryman, Jr.

[20] See *Santora v. American Combustion, Inc.*, 225 Ga. App. 771, 775 (3) (485 SE2d 34) (1997) (A party "has the right to cross-examine each witness on the amount and reasonableness of the fees and costs requested."); *Mitcham v. Blalock*, 214 Ga. App. 29, 32-33 (2) (447 SE2d 83) (1994) (same).

[21] The lack of a transcript makes it unclear what attempts, if any, Jones made to cross-examine the County's witnesses before the trial court's ruling.

[22] (Punctuation omitted.) *Thomas v. Brown*, 308 Ga. App. 514, 516 (2) (707 SE2d 900) (2011).

[23] (Citation and punctuation omitted.) *Trotter v. Summerour*, 273 Ga. App. 263, 266, n. 2 (614 SE2d 887) (2005).

sarily expand the proceedings," specifically identifying several instances of sanctionable conduct on the part of Jones, including "a pattern of technical violations," improper accusations against counsel for the County, harassing discovery conduct, and filing a motion that lacked substantial justification. In the absence of any evidence in the record to contradict these findings, we find no abuse of discretion in the trial court's decision to impose sanctions pursuant to OCGA § 9-15-14 (b).[24]

We are unpersuaded by Jones's argument that "[s]ound public policy dictates a reversal in this case because to do otherwise would chill future civil rights litigation." The trial court did not award fees and expenses based upon a finding that the *claims* lacked substantial justification, but instead that Jones's conduct during the litigation was sanctionable. For the same reason, Jones's argument that "[t]he trial court abused its discretion by issuing sanctions under OCGA § 9-15-14 because this case is not frivolous litigation" fails.

(c) Jones also challenges the *amount* of attorney fees and expenses awarded to the County, arguing that the trial court erred by basing the fee award on a higher hourly rate than the County actually incurred, resulting in an improper windfall to the County. Given the record on appeal, this argument presents no basis for reversal.

In his affidavit filed in support of the County's motion for attorney fees and expenses, Berryman testified that the County "spends approximately $85[ ] per hour for my services consisting of salary, varied benefits[,] and administrative costs. . . ." Berryman further stated, however, that "[t]his rate falls far below the range of rates that I have been paid when I engaged in private practice," which was between $180 and $250 per hour, a range of rates that he opined is reasonable "for an attorney of my education, experience, and background." Similarly, Gellins testified that the County "spends approximately $40[ ] per hour for my services consisting of salary, varied benefits, and administrative costs. . . ." She too stated that "[t]his rate falls far below the range of rates that I have been awarded and/or paid for my successful representation of civil rights clients (between 1993 and 2002, @ $150-$250/hour)." In the order granting the attorney fee motion, the trial court concluded that "the rate[s] of $250 per hour for Mr. Berryman and $225 per hour for Ms. Gellins are reasonable and usual rates for attorneys of similar skill and experience in this area," and the trial court based its award on

---

[24] See *Doe v. HGI Realty, Inc.*, 254 Ga. App. 181, 184 (561 SE2d 450) (2002) ("[T]rial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion.") (punctuation omitted).

these rates.[25]

OCGA § 9-15-14 (b) authorizes an award of "reasonable and necessary attorney's fees and expenses." "In order to recover attorney fees, a prevailing party must prove both their actual cost and their reasonableness. . . ."[26] It is well-settled "that a party's attorney himself is competent to testify as to his opinion on reasonable fees."[27]

In this case, the County attorneys were salaried employees, and they were not paid an hourly rate for their time. Thus, their fee structure is difficult to quantify with any precision.[28] Nevertheless, in their affidavits, the attorneys attempted to calculate their hourly rates, taking into account salary, benefits, and administrative costs. Because their estimated hourly rate for their work for the County fell "far below" the rates they were previously paid when engaged in private practice, both attorneys listed a higher rate, which they stated was reasonable in their opinion for attorneys of their education, background and experience. And given the lack of a transcript, we are not aware of any evidence to controvert the attorneys' opinions that their rates were reasonable. After considering the evidence, the trial court concluded that $250 per hour was a reasonable rate for Berryman based on his "years of experience and practice, particularly in the field of government and litigation" and that $225 per hour was a reasonable rate for Gellins based upon her 25 years of active practice, including "significant litigation experience."

The rates employed by the trial court are "within the range of the evidence adduced," and the award "is not on its face manifestly unreasonable."[29] Given the facts of this case, we decline to interfere with the trial court's broad discretion in awarding $9,145 as the County's "reasonable and necessary attorney's fees and expenses of litigation" incurred as a result of Jones's sanctionable conduct under

---

[25] Both attorneys filed exhibits to their affidavits detailing the time spent on various motions, and the trial court made specific award allocations based on fees and expenses incurred in responding to Jones's individual sanctionable actions. Jones does not challenge the trial court's findings regarding the amount of time expended by the attorneys.

[26] *Johnston v. Correale*, 285 Ga. App. 870, 871 (1) (648 SE2d 180) (2007).

[27] *Walther v. Multicraft Constr. Co.*, 205 Ga. App. 815, 817 (3) (423 SE2d 725) (1992).

[28] Salaried attorneys employed by public entities, including government, and various legal aid organizations likely face similar challenges when attempting to quantify an hourly rate for purposes of determining an attorney fee award. For the same reason, calculation of attorney fee awards to clients with a contingency fee agreement with their attorney is also more complicated. Thus, in such cases, the trial court may "consider the contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees" or it may "determine the amount of the award of attorney fees on the basis of hourly rates." *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 403 (1) (433 SE2d 606) (1993).

[29] *Contract Harvesters v. Clark*, 211 Ga. App. 297, 299 (3) (439 SE2d 30) (1993).

OCGA § 9-15-14 (b).[30]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED OCTOBER 21, 2011 —

*Charles A. Jones, Jr.*, for appellants.
*William C. Berryman, Jr., Amy S. Gellins*, for appellee.

---

[30] See *Greer v. Davis*, 244 Ga. App. 317, 320-321 (3) (534 SE2d 853) (2000) (stating that "[t]he trial court's determination as to what fees are reasonable and necessary must be sustained unless the trial court abused its discretion" and affirming an award of attorney fees because "[t]he trial court heard testimony from plaintiff's counsel; defense counsel was given an opportunity to cross-examine on the amount of the fees; and plaintiff's counsel submitted an extremely detailed accounting of each charge"); *Contract Harvesters*, 211 Ga. App. at 300 (3) ("The award of $1,500 as reasonable attorney fees incurred . . . is within the range of the evidence adduced and is not on its face manifestly unreasonable. An award of attorney fees and expenses of litigation made under OCGA § 9-15-14 (b) is discretionary and the standard of review is abuse of discretion. Under this standard, the record supports the superior court's award.") (citation and punctuation omitted).